Good morning. Please proceed. The fourth case on the floor is 2-090-2100. Rochford Police Benevolent and Protective Association Unit 6 v. Larry Morrissey. Arguing on behalf of the appellant is Mr. Angela L. Hammer. Arguing on behalf of the appellant is Todd Bass Police. Mrs. Hammer? Good morning. Please proceed. The court counsel, Angela Hammer, on behalf of the city of Rochford, appellate in this matter. This matter comes before the court as a result of the city's denial of a Freedom of Information Act request made by the Rochford Police Union. Specifically, the Rochford Police Union requested a survey that was conducted at the request of the Rochford Police Department. It was distributed to civilian employees, sworn personnel, and citizens in a specific geographical location within the city of Rochford. The city denied the plaintiff's request based upon 5 ILCS 140-7, subsection 1A and 1N. Specifically, the self-critical analysis privilege that we claim should apply in this case, as well as the internal audit provision contained in subsection N. The survey was a candid, anonymous survey designed to assess the performance of the police department. The survey is attached as Exhibit A to the defendant's motion for summary judgment in the record. Counsel, just some threshold questions. Obviously, if the public body seeks to use one of the exceptions to disclosure, isn't the burden then on the public body to prove that the exemption exists? Yes, Your Honor, that is correct. Okay. You've referred to this in your opening as a survey, but throughout your briefs, you refer to it as an audit. That's correct. It's our opinion that they're not mutually exclusive. I'm referring to it as a survey, Your Honor, because that is the title of the document. It is a police department survey, rather than referring to it as an audit. So you're going under the audit, if it exists? That is correct, under the subsection N exemption for the audit. Well, here's the other, I think, troubling aspect, initially, to the argument. As I understand it, this was a job, sort of a job satisfaction survey. Whether we're calling it an audit or a survey, it seems to me that under the law, the city would have to provide some type of a detailed rationale or reason to explain the conclusion why this is a survey that falls within the exemption. What detailed rationale was provided to the trial court to support that argument? Where was the detailed rationale to support the argument that this should be an exemption, other than merely calling it an audit? The detailed rationale was sent in the denial letter to the plaintiffs that explained our rationale at determining our decision that it was an audit and exempt from the exemption. And that would be what? Summarize it for me. What's the detailed rationale why this is exempt? Your Honor, this asks for information from sworn personnel, civilian employees, and citizens of Rockford, outlining their satisfaction with the performance of the Rockford Police Department, with their satisfaction with the Chief's general idea for the progression of the police department under his control, as well as suggestions for improvement. Why wouldn't any of the police officers be entitled to this information? It's our opinion that it rises to the level of either an audit or a self-critical analysis privilege, and allowing the dissemination of this information would severely deter or possibly even eliminate municipalities' motivation in making the police process better. Has Illinois ever acknowledged, recognized a self-critical analysis privilege? No, Your Honor. The Illinois state courts have not. The federal courts in the Northern District of Illinois do presume that the self-critical analysis privilege exists, and they have provided four guidelines in determining whether the self-critical analysis privilege would apply in each case. But that's under a different statute, right? The federal FOIA is, excuse me, strike that. The Illinois FOIA is tailored based upon the federal FOIA. There are some discrepancies, but primarily it is substantively the same act. Well, there's another issue, too, that hopefully you can give us your position on, and that is really the definition of the term audit. It's in the FOIA. An audit is generally a formal official examination of some kind of books of account. This has nothing to do with the internal books or records of the police department. It has to do with basically job satisfaction, as you've already acknowledged. How is this an audit, and if it is, audit of what? Do you audit somebody's subjective opinions about a department? How can that ever be an audit? Your Honor, we're operating under the second definition that is contained for audit, which defines an audit as a methodical examination and review. Of what? Of the police process, the departments as they exist, the departments as the chief created new arenas, specifically community policing, community-based policing, and the new areas within the law enforcement arena that the chief brought to the table when he was appointed chief of police. Now, wouldn't this be, and what you're saying would probably be great for the legislature to address, wouldn't you think? I mean, they address the same thing in the Medical Studies Act, where medical personnel can look over their actions, determine what they did right and what they did wrong, and when that's not discoverable. Wouldn't that be the better way in this case, or if the legislature intended for this audit, so-called audit, to be an exemption, don't you think that they could have enacted such a statute? Your Honor, because the definition of audit is not contained in the Freedom of Information Act, it's given its plain and ordinary meaning, which we are determining, in our view, was a methodical review and examination. While it is preferred by courts that the legislature enact privileges such as the Medical Studies Act, I was trying to draw an analogy between issues such as this and the Medical Studies Act, because those issues are life and death as well that are being dealt with in hospitals, and the police department has some of the same seriousness of the issues, life and death decisions and policies. And public safety. But here's the breakdown of the argument. Does the term audit not imply an objective and methodical examination and assessment of something? That's an audit. You're not hitting personal opinions. You're taking an objective, methodical assessment of something. A survey about job satisfaction of sworn and civilian personnel is a subjective opinion. How do you audit somebody's subjective opinions? Give me a reason and tell me how you could ever do that. I'm all ears. Your Honor, I believe the purpose of the survey was to receive candid information, to give the court some background information. There was some contention between the union and the city administration and the police department. Is this part of the record? It is in the sense that the trial court judge commented on that dissension between the parties. So how is this an audit when you're calling for subjective opinions? Your Honor, if that's the view that the court is taking, then I would rely on my argument in the brief that it is a personnel matter and should be exempted under the personnel matter exemption. I can understand that shift because just to lay this to rest definitively, clearly, to me, unless you can convince me otherwise, an audit is a methodical examination of something that already exists, quote, unquote. You're auditing something that already exists. If you're asking for input on job satisfaction, it can't by definition be an audit because it doesn't exist. There's nothing to audit. You see the logical disconnect of that position? I do, Your Honor. You're getting input. You can't audit the input until you receive it. It can't be an audit. So now let's get into the next alternative argument. Okay. My alternative argument is that this does fall within the personnel matter exemption contained within the Freedom of Information Act because it does, in fact, amount to a job satisfaction survey. Ms. Hammer, you talk about one of the reasons that you also think that they should not receive these materials because they're attempting to further their interests because they're a union. Is your position then that it should, if an individual in the community would have asked for this, that it may have been looked at differently as opposed to being a union? Your Honor, I don't believe that's my position as to why they should not have received the records. I believe that's my position as to why attorney's fees were inappropriate because the purpose of the FOIA request was to further their commercial interests in the bargaining arena. Okay. I apologize. I misread that. Okay. And not to put you on the Hanson again, but now you've raised the personnel issue. But here's what I'm troubled with. This, as I understand the survey, you can correct me if I'm wrong, it was supposed to be anonymous, correct? Correct. So if you're seeking responses that do not pertain to individuals, there's no personal information being revealed, it's anonymous, how could that fall within a personnel exception? Your Honor, it is anonymous in the sense that there are no names on the documents. But the questions, the responses to the questions may allow someone to determine who the author of the survey is. If the court would look at Exhibit A to the defendant's motion for summary judgment, the survey is there in blank. And there are questions, what department do you work in, what race are you, what gender, how long have you been with the department? So it's possible that someone who's familiar with the department may be able to ascertain who the author of the surveys are. It's possible, but it's also possible that it isn't going to be revealed. I mean, isn't the purpose of the personnel exemption is to protect some privacy of the individual members of the department? I mean, isn't that the reason why you have these matters that are exempt from disclosure? If you take an anonymous survey of subjective opinions, that's a hard sell if this is a personnel matter. The issue that we have, Your Honor, with that point is that we don't know if the authors of the surveys were told whether it was anonymous or whether it would be subject to dissemination. I thought, did they sign them with their names on it? No, Your Honor. Well, then how can you attribute it to any individual? Well, as I stated previously, based on some of the questions that are asked in the survey, the author of the survey may be able to be ascertained based on their responses. And there are several. One of the last questions on the survey for sworn personnel and civilian employees is provide any suggestions for improvement. And there are several responses that are handwritten and some numerous pages long. So the details contained within those comments may also be able to allow someone to ascertain who the author of the survey is. Do you have any case law authority for the proposition that a job satisfaction survey in a police department is exempt from disclosure for you? No, Your Honor. There is no case law directly on point in this case. And by using author of the survey, you mean the respondents, people that are answering the questions, right? Yes. Any other? No. Okay. Moving on to my argument for why the award of attorney's fees was inappropriate in this case. It is our position that by its definition, a labor union has a commercial interest with the city of Rockford. There are currently, there's collective bargaining. And by its definition, a labor union is a labor organization that consists of like-minded trades people who are organized for the sole purpose of furthering their interest, specifically related to wages, working conditions, and benefits. So it's our position that by definition, the plaintiff has a commercial interest in receiving this information. And therefore, in order for attorney's fees to be awarded, they must show that the records were of a clearly significant interest to the public and that the public body lacked any reasonable basis in law for withholding the record. And the reasonable basis in law requirement doesn't mandate that the exemption that we are claiming be correct, but merely that there was a colorable basis in law for making that statement. Well, yeah, because if it was correct, there wouldn't be, it wouldn't be entitled fees at all. Correct. Yeah, okay. And we have reviewed this under an abusive discussion standard, do we not? That the trial court aired and the trial court reviews its discussion, correct? Yes, Your Honor. Is there no further questions? I don't think so. At this time, you'll have a few minutes on your button, though. Thank you for your argument. Thank you. Mr. Reese? Yes, Your Honor. Good morning, Your Honors. Good afternoon. Five minutes. I'm ahead of you. Todd Reese on behalf of the Rockford Police Union. I'd like to briefly talk about the internal audit. Then I'll talk about the self-critical analysis and then the attorneys. This is clearly not an internal audit. One point that counsel did not bring up or was not brought up. The trial judge actually reviewed the survey with the answers. He had a chance to thoroughly go through that. We had previously discussed the survey with him, and he had looked at the unanswered copy, and that was what was presented at the time of trial, and he ruled in favor of the plaintiffs that this was not an internal audit. He did not have the answers at that time. Once the motion to reconsider was presented, the answers were provided to him, and there was a request for an in-camera inspection. He took a look at those before we had a chance to discuss that, but in any event, he still ruled that this was not an internal audit. You said a trial, and then you said a motion to reconsider. It wasn't a trial. I apologize. Let me rephrase. The summary judgment motion, and then we had oral arguments for that. He ruled in favor of the plaintiffs granting us the summary judgment. Then he reserved the attorney fees, so we had a second oral argument just on the attorney fees, and then at that point counsel had indicated we're going to file a motion to reconsider, and he waited until the end of that to determine the final amount of attorney's fees. In a motion to reconsider, he had the answers. He did have the answers, had also reviewed those prior to our argument, so he had knowledge of what the survey actually said when we had the opportunity to present arguments. With respect to the self-critical analysis privilege, that is not an accepted privilege within the state of Illinois. This court, the second district, has said in the cases provided in the brief before that it is best to leave privileges up to the legislature to put in statute. I believe that the city's reliance on the Medical Studies Act is misguided. That is not a self-critical analysis privilege as is said in their brief. It is a peer review analysis where you actually have named individuals, committees looking at each other to discuss the improvement of hospital conditions and patient care. That is not the case of a self-critical analysis privilege. Could you say this is a peer review? The Medical Studies Act? No, what they did here. Could you argue that it's peer review? No, I don't believe you could argue that. This is an anonymous survey directed at three people groups, the sworn officers, the civilian employees, and then even the public. The public was included in this. It's anonymous. It's not a peer review. Could you determine who it was? I don't know. I've never seen the answers, but I doubt that you would be able to, and that's speculation at best. Well, a good police officer who's a good investigator can probably figure that out. Well, if we had handwriting experts analyze each one of them, I'd imagine that that could be done if it was compared to something else. Counsel, the opposing counsel has argued that this touches on personnel matters, which, you know, if it actually did, then it would be arguably an exception or is an exception to the Employer Act. But why is this not, in your opinion, touching on personnel issues? Again, this is an anonymous survey. Just ask me for opinions. It's not directed to any specific employee. It's not part of an employee's personnel file. The City of Rockford does not have a personnel file for the City of Rockford. I would also point out that that was not one of their claimed exemptions from the start. It was not part of their denial to the union a personnel matter. It came up in a side note in one of the earlier briefs and then was brought up as a potential exemption. When was it first raised, then, in your opinion? Off the top of my head, I don't have an answer. It wasn't raised in that position in the summary judgment? No. It may have been mentioned. I'd have to look at the briefs. It may have been mentioned in a side note in the brief or summary judgment motion, but it was not discussed. I don't feel that it is a personnel matter for those reasons. Let me ask you about this self-critical analysis that is sometimes used in connection with the federal FOIA. Is it contained in the federal FOIA itself, the statute, or is it something that was judicially created at the federal level? Your Honor, it is not contained within the federal FOIA. It was judicially created, and I've referred to the one case, Morgan v. Union. No, I'm sorry. I apologize. Banks v. Lockheed. That's a North District of Georgia case, and I've not provided that to you because I'm not relying on that case. I'm just mentioning that case. That's where it first came up back in 1971. One interesting matter with the self-critical analysis, which I think is extremely important, is any time that it has come up, it's been within litigation, mostly for discrimination employment cases after the company or the organization or the government has had a chance to do a study about what was going on. And then that self-critical analysis privilege came up, saying, hey, we need to be able to look at our company, find out what the problems are, and if we're not able to do that in this litigation process, and the privilege was brought up in response to a production request, if we can't do that, then how are we going to be able to make ourselves better? So it's not appropriate in this case. It's not a discrimination. It's not employment law. It has been used in tort cases as well, but it's not part of the federal FOIA. It was judicially created. All right. So what she's asking us to do is to do the same thing with our statute that the federal courts did with the federal statute, which is to create a judicially created self-critical analysis. Exactly. And then you would also, or the court would also have to create the standards or the tests to determine that. Well, you've described to me where it began in the federal court system, but, I mean, they've apparently been able to accomplish these things at the federal level because there is such an exception at the federal level now. So why can't we do it? It's not fully accepted at the federal level. Not all. When it's discussed, it's discussed, and this is not a fully accepted privilege. Let's assume it's accepted. If it's assumed it's accepted, then this would be the standards that we would use. It's not a fully accepted privilege. And, again, for privileges, Illinois has disfavored privileges because they withhold truth. And it's best to leave to the legislature. Almost all of our privileges are enacted by the legislature statute. Well, you said a few months ago you were giving examples of companies or something that are saying, how are we going to make ourselves better if we can't, if we have to disclose everything? Why doesn't that hold true for the Rockford Police Department? I mean, in this situation, if this gets disclosed, I've got to believe that they're going to be hesitant to do it again. There are different ways. A true internal audit, referring to books, is a financial matter. No, I'm not getting to whether it's an audit or not. Call it a survey, whatever. They want to survey. They want to do just what they did. They want to get the public's perspective, the sworn personnel's perspective, and the non-sworn personnel's perspective. They want to try and learn these things and see how they can improve the organization of the Rockford Police Department, and this is going to have a chilling effect on their ability to do that. That's their argument. I know that is their argument, the chilling effect. However, the purpose, the intent of the Freedom of Information Act in Illinois is to allow free access to the government doings so that we can make full decisions and be aware of what's going on with our government. It's contained in Section 1, the legislative intent, in Section 1 of the act, and to not allow this free access to our government would be against the public policy and intent of the act. Even if it interferes with the organization's ability, even if it has a chilling effect, even if it does, you say, it doesn't matter. The legislature has indicated, and I've attached a comment from Attorney General Lisa Madigan as well, that they have taken all of these considerations into their decision and incorporated those in the exceptions. The policy of providing this information, allowing the public to access this information, greatly outweighs the possible chilling effect that may happen with a survey. Do you think we should look at the motivation or what the motivation is for the union wanting this information versus the public wanting this information? I believe that goes to the issue of the attorneys' fees. Counsel has brought up the commercial aspect of the union. Even separate and apart from the attorneys' fees, couldn't one argue, as Justice O'Malley was saying, it's going to put a chilling effect. One wonders what's the motivation of the police department or the union in wanting this information. Maybe it would create a chilling effect on the department, for the union asking for it, and maybe not a chilling effect for the public asking for it. Do you see a difference? Did the court take that into consideration at all? The court, in the transcript that we have here from the motion to reconsider, did touch on some of the embarrassing issues that may be to the city. I know counsel has indicated in their brief that this may be reflected upon the union. The union's purpose for asking for this information is to better themselves as the police department and to better serve the public. We have the public involved in this survey and civilian employees. I don't see a chilling effect on the union or the police officers. Was there no or was there ever going to be any communication between the police department and the city to the police officers concerning this survey? Like, this is the way we're going to improve? We've heard this is a problem. Let's try and improve it that way. Wouldn't that remedy the fear that you have as a union that you want to improve? I'm not sure that I quite understand the question. I guess I'm having a hard time with this, but the police department, I would think, and the city, armed with this information from this survey, I'm not sure if it was discussed or wouldn't you think that they were going to share this information saying, guys, this is how we're going to get better because we had this survey and they said that you're responding to 911 calls too late. Wouldn't that be the same way for the union and the police officers to get this information to better themselves versus a FOIA request? I'm sure that the police department, through their administrative persons, do communicate with the police officers to train them, and they do consistently try to get better. And possibly they may have used portions of the survey to discuss that. Sure, any problems. However, these are public records as admitted by counsel, and we don't believe there's any exemptions that apply, and the union is allowed to the information contained in the survey. The city has still not provided, that's why we're here, the survey. So whether or not they addressed all of the issues, I don't know. The union, I believe, is entitled to this survey. They want to better themselves, they want to better serve the public, and they should be entitled to see this. Anything else? May I ask? Sure, go ahead. I want to address the commercial interest. The statute indicates that for attorney's fees, if the requesting party had their fundamental purpose is for commercial interest, then you have to show that there is a significant interest for the public and that the denial was not within a reasonable basis in law. If there is no commercial interest, then all you have to show is that you substantially prevailed and then it's discretionary by the trial judge. In this case, we argued the commercial interest. The court trial judge found there was no commercial interest. He didn't even say there's some commercial interest. He found no commercial interest, found that union substantially prevailed, and then thoroughly, carefully discussed, looked at the attorney's fees and awarded the attorney's fees. So I think it is appropriate. Even if you were to determine there may be some commercial interest, I believe that we still prevail that this information is very significant to the public, and I do not believe there was any reasonable basis in law for the denial of this information based on a privilege that is not part of Illinois, based on a survey that doesn't come close to being an internal audit. So that's what I wanted to touch on. What's your position with respect to the attorney's fees being excessive or punitive? Different courts have discussed the purpose for the attorney fee statute and said it's neither punitive or excessive or, right, punitive or a reward. In this case, the trial judge did carefully review all of the presentation, the documentation provided to him, examined myself, discussed that, and found that these were reasonable. And even in his order, allowed for asking for additional attorney's fees if this matter was appealed or taken up on appeal. That is contained within the order as well. I don't find that this is punitive or excessive in nature at all. Thank you, counsel. Thank you. We have Mrs. Hammer for rebellion case on behalf of the state. In response to the questions that were addressed in Mr. Reese's argument, the city did raise the personnel exemption in its motion for summary judgment and is contained in paragraphs 15 through 18 of our motion for summary judgment. And the purpose of the survey was to make the police department better, to ensure public safety and policing services to the benefit of the community and we should not be forced to disseminate this information because it will eliminate the motivation for municipalities in the future to conduct surveys and obtain information of this nature in the future in an effort to improve services. How did the city and or the police department intend to share this information with their officers to achieve that goal? Your Honor, that was never, we never got to that point because this lawsuit was filed before the survey process was even completed. The results of the survey had not even been completed yet at the time that the lawsuit was filed. So I can't speak as to how that information planned to be shared with members of the police department because we never got there. The lawsuit was filed before the college was finished compiling the results of the survey. And just briefly, in order for the plaintiff, if they do have a commercial interest, to show that this information is of significant interest to the public, the union is the only request we've received to this point. So it is difficult for me to believe that they met their burden of proof on that issue if the court would find that they have a significant commercial interest in obtaining this information. Thank you. Thank you both for your arguments.